UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN W. MULLIN, II, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 1:11-cv-00941-TWP-DML |
| TEMCO MACHINERY, INC., ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant Temco Machinery, Inc.'s ("Temco") Motion for Summary Judgment (Dkt. 31). Plaintiff John W. Mullin, II ("Mr. Mullin"), filed this age discrimination suit under the Age Discrimination in Employment Act ("ADEA") against Temco, alleging he was terminated because of his age. Temco filed this Motion, asserting that Mr. Mullin cannot establish a case of age discrimination. For the following reasons, the Court agrees and **GRANTS** Temco's Motion (Dkt. 31).

**I. BACKGROUND**

In 2006, Temco Machinery purchased Midwest Fire & Safety, a company that served as the authorized dealer in Illinois and Indiana for Pierce Manufacturing, which manufactures custom fire trucks and other rescue apparatus. Mr. Mullin began working for Midwest Fire & Safety in 1990 when he was 36 years old and when Temco took over in 2006, Mr. Mullin was hired as a Temco employee at the age of 52. As a sales associate for Temco, Mr. Mullin was responsible for selling fire trucks, traveling throughout his assigned territory, and participating at conventions and fire department activities and to work to penetrate accounts by building relationships. Most of Temco's sales associates are, like Mr. Mullin, over the age of 40 because

the job requires in-depth knowledge of the industry and the products sold. Many are current or former fire department personnel.

During Mr. Mullin's tenure with Temco, the company had between four and six Sales Associates with the State of Indiana. In terms of sales, Mr. Mullin sold fire trucks to nine customers between 2007 and 2010, and was awarded "Top Salesman in the State" for the fiscal years 2008 and 2009. The award was based on which salesperson in each state sold the most units. According to Temco's sales figures for each sales associate between 2007 and 2010, Mr. Mullin produced the highest gross profits for Temco.

On November 16, 2009, Temco hired Ronald Baylog ("Mr. Baylog"), a 67 year old, as Vice President and General Manager of the Indiana sales division. Mr. Baylog had extensive past experience, including management of sales associates. As a collective unit, the Indiana sales division was not meeting Temco's sales performance expectations and the Indiana sales staff was so informed. At the time of his hiring, Mr. Baylog was directed to evaluate and manage the Indiana sales division, including making assessments and recommendations to owners Michael Mikoola ("Mr. Mikoola") and Thomas Keiser ("Mr. Keiser"), so as to improve the performance of the Indiana sales division. Mr. Baylog became Mr. Mullin's immediate supervisor. Mr. Baylog instituted new policies regarding the Indiana sales division for the purposes of developing a structured organization and standardized operation. These included the following requirements:

> (a) the sales staff, including Mullin, was required to complete and turn in weekly contact/call reports or sheets for purposes of tracking and reporting prospective customers;
> (b) the sales staff, including Mullin, was required to assist in the classification of customers for purposes of analyzing and preparing a list of the highest and lowest value target(s) of customers. Thereafter, the sales staff was expected to call on the accounts; and

2

> (c) the sales staff, including Mullin, were required to attend and participate in weekly Monday morning sales meetings.

Dkt. 32 at 6 (citations omitted).

Temco asserts that Mr. Mullin failed to turn in his weekly contact/call sheets on a timely basis in the spring of 2010, a fact supported by emails between Mr. Baylog and Mr. Mullin. However, Mr. Mullin disputes this fact and asserts that he did timely submit his contact reports. Temco also asserts that Mr. Mullin was resistant to Mr. Baylog's directives that he classify and call on accounts. Further, Mr. Mullin requested that Mr. Baylog reschedule Monday morning meetings to avoid conflicts with Mr. Mullin's schedule. Mr. Mullin's superiors believed he did not build up his customer base and were upset over a number of sales Mr. Mullin lost. Mr. Mullin's superiors also took an account away from him upon a customer's request to no longer work with Mr. Mullin. Mr. Mullin has acknowledged that Mr. Mikoola was dissatisfied with his performance as a sales associate.

In the spring of 2010, Mr. Baylog made his assessments and recommendations regarding the Indiana sales division. Mr. Baylog found that Mr. Mullin was not performing as a sales associate to Mr. Baylog's expectations, that he lacked organization, and was resistant to efforts to supervise and refine his activities as a sales associate. Mr. Baylog thus recommended that Temco terminate Mr. Mullin's employment. Mr. Mikoola and Mr. Keiser accepted Mr. Baylog's recommendation and on May 13, 2010, Mr. Mullin was terminated. Mr. Mullin was told that Temco was paying him too much for his sales. He had no warning that termination was imminent and was not offered a reduction in pay.

Shortly after Mr. Mullin was terminated, Temco hired two new sales associates for the Indiana sales division: Andrew Wolka ("Mr. Wolka"), age 24, and Matthew Timmer ("Mr. Timmer"), age 29. Mr. Wolka's and Mr. Timmer's responsibilities were the same as Mr.

Mullin's. The two new associates had no experience selling fire trucks and Mr. Wolka handled accounts previously handled by Mr. Mullin. Mr. Mullin filed this ADEA action on July 15, 2011. Additional facts will be set forth below as necessary.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III. <u>DISCUSSION</u>

The ADEA makes it unlawful for an employer to "discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). The protections of the ADEA are limited to individuals over the age of forty. 29 U.S.C. § 631(a). A plaintiff can survive summary judgment under either the direct or indirect evidence method. In this case, Mr. Mullin proceeds under the direct evidence approach. "Taken literally, direct evidence would require an admission by the employer, but [courts] also permit circumstantial evidence that 'points directly to a discriminatory reason for the employer's action.'" *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012) (quoting *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 783 (7th Cir. 2004)). Fundamentally, "the plaintiff must connect the circumstantial evidence to the employment action such that a reasonable juror could infer the employer acted for discriminatory reasons." *Id.* Mr. Mullin must show evidence "that could support a jury verdict that age was a but-for cause of the employment action at the summary judgment stage." *Id.* at 604. Examples of such circumstantial evidence include suspicious timing; ambiguous statements, behavior, or comments directed towards other employees in the protected age group; systematically better treatment of employees outside the protected age group; and pretextual reasons given for the adverse employment action. *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114–15 (7th Cir. 2009). Mr. Mullin asserts that he has produced a "convincing mosaic" of circumstantial evidence consisting of pretext, suspicious timing, and comments.

**A.   Pretext**

    **1.   Shifting Reasons for Termination**

Relying on pretext, Mr. Mullin contends that Temco has provided shifting and inconsistent explanations for the challenged employment decision. As the Seventh Circuit has

stated, "when an employer gives one reason at the time of the adverse employment decision but later gives another which is unsupported by the documentary evidence, a jury could reasonably conclude that the new reason was a pretextual, after-the-fact justification." *O'Neal v. City of New Albany*, 293 F.3d 998, 1005–06 (7th Cir. 2002).  Mr. Mullin argues that when he was terminated on May 13, 2010, Mr. Mikoola "simply told him, 'We are paying you too much for your sales.'"  Dkt. 39 at 22.  Since that date, Mr. Mullin highlights several reasons given by Mr. Mikoola or Mr. Baylog that allegedly shift or change Temco's position.

First, in its Position Paper submitted to the Equal Employment Opportunity Commission ("EEOC"), Temco stated that Mr. Mullin was terminated for a decline in sales performance beginning in early 2009, which resulted in lost sales for the company.  Dkt. 40-13 at 2.  Temco also stated that Mr. Mullin refused to make sales calls or call on accounts as was customary.  Finally, Temco stated Mr. Mullin, contrary to requests and company policy, used company email to communicate with a direct competitor.

Second, during Mr. Baylog's deposition, he testified that he made the recommendation that Mr. Mullin be terminated.  Specifically he stated that Mr. Mullin's skill set needed improvement, but Mr. Mullin was not open to improvement.  Further, he stated that Mr. Mullin failed to timely turn in contact sheets and call reports and asked to reschedule required Monday sales meetings.  Mr. Baylog also testified that Mr. Mullin failed to attend events hosted by the Wayne Township Fire Department and Speedway Fire Department.

Third, during Mr. Mikoola's deposition, he testified that the "straw that broke the camel's back" and led to Mr. Mullin's termination was a factory visit in Appleton, Wisconsin during which Mr. Mullin left representatives from the Westfield, Indiana Fire Department alone in the factory.  Dkt. 40-2 at 16, 93:12.  Additional reasons given by Mr. Mikoola include that Mr.

Mullin was unwilling to cooperate and did not complete enough sales. Taken together, Mr. Mullin argues that a "reasonable jury could infer pretext based upon these shifting and inconsistent reasons asserted for Mr. Mullin's termination." Dkt. 39 at 22.

Temco contends that it never gave shifting or changing reasons for Mr. Mullin's termination. Instead, it argues it first summarized the factual bases for Mr. Mullin's termination before the EEOC and subsequent explanations are consistent with the evidentiary record. The Court agrees with Temco. Mr. Mullin testified that when he was terminated, he was given only the vague reason that Temco was paying him too much for his sales. The Court finds that the expanded reasoning given before the EEOC and during depositions are simply that: expanded factual bases for Mr. Mullin's termination. The reasons given for termination are not unsupported by the documentary evidence. In fact, the evidentiary record supports that Temco had legitimate reasons to be unsatisfied with Mr. Mullin's performance. Though servicing 250 sales accounts, Mr. Mullin only sold to nine customers in a period of three years. He lost several sales and was asked by a customer to be removed from an account. Mr. Mullin points only to his past awards as Salesman of the Year and his gross sales to refute this evidence. The Court agrees with Mr. Mullin that he had success in the immediate years prior to his termination, but he has not rebutted the evidence that he did not timely submit call reports, fully cooperate with Monday meetings, or that his current sales were not meeting expectations.

Mr. Mullin also argues that a reasonable jury "could find it entirely unbelievable that Temco would terminate an employee who had the highest overall gross profit simply because he did not allegedly sell to enough different customers." Dkt. 39 at 25. He cites *LoTurco v. Terminix International Co.*, No. 1:07-cv-1434-LJM-DML, 2009 WL 2044343, *4 (S.D. Ind. July 9, 2009), to support his position that "a reasonable fact finder could find it entirely unbelievable

that a company would, in good faith, fire an employee who had one of the highest overall sales performances in the region, merely because he did not excel at a subset of overall sales." In *LoTurco*, plaintiff had one of the highest sales performances in his region. Yet, defendant fired plaintiff for failing to make "creative sales," which were defined as sales resulting from "a first-time contact with a potential customer that the customer did not initiate." *Id.* at *1 n.1. Plaintiff was undisputedly the lowest performer of creative sales. Because defendant provided no reason for why an employee's total creative sales was more important than overall sales, there was sufficient reason to find that defendant's reason for termination was not credible. The court concluded that if defendant's showing were enough, "employers would win at summary judgment in every case in which they stated any objective standard that the terminated employee did not meet, even if that objective standard did not affect the company's bottom line." *Id.* at *4.

The court in *LoTurco* also stated that "there is a fine line between evidence that appropriately challenges the employer's proffered reasons as being unworthy of credence and evidence that the employer made a mistake or bad business judgment." *Id.* at *3. Heeding this guidance, the Court distinguishes *LoTurco* as follows. Unlike the *LoTurco* defendant, Temco did not create a subset of sales as an objective standard that does not affect the company's bottom line. Temco's position is that the entire Indiana sales division, including Mr. Mullin, underperformed. Specifically, Mr. Mullin, though the best of the "underachievers," *see* Dkt. 40-7 at 7, 41:15–20, did not meet overall sales expectations given the number of accounts he serviced and among other reasons. Temco was unhappy with the total number of sales Mr. Mullin made to his 250 accounts, and not the number of sales made to different or unique customers.

Additionally, Mr. Mullin alleges that he was terminated as a cost-cutting measure, based on the statement by Mr. Mikoola that he was paid too much for his sales. Focusing on the "paid too much" portion, Mr. Mullin argues the reason was simply a pretext like in *Erpenbeck v. Premier Golf Management., Inc.*, No. C-1-05-419, 2006 WL 3390996 (S.D. Ohio Nov. 22, 2006). In *Erpenbeck*, the court found pretext in defendant's reasoning that plaintiff was paid a high salary, because defendant failed to extend plaintiff an "offer to accept a pay cut and stay on with reduced responsibilities." *Id.* at *3. However, based on the discussion above, the Court rejects Mr. Mullin's theory. It is clear to the Court that Mr. Mikoola was not referring to Mr. Mullin's salary as the reason for his termination, but as the later explanations show, Mr. Mullin was terminated because his performance did not support his salary.

Mr. Mullin argues the given reason that he resisted new initiatives is pretext. Specifically, he relies on *O'Reilly v. Marina Dodge, Inc.*, 435 Fed. Appx. 8 (2d Cir. 2011). In that case, the Second Circuit found defendant's reason that plaintiff resisted new initiatives was not supported by the evidence and "must be evaluated in light of the arguably ageist jokes" plaintiff suffered at work. *Id.* at 12. The court noted that a common stereotype of elderly people is that they resist change and new approaches; therefore, given the lack of evidence supporting the justification for termination, a reasonable jury could have found that defendant's justification was a pretext for its desire to hire a younger employee. *Id.* The facts in this case do not support a similar conclusion. Temco has produced emails supporting its position that Mr. Mullin failed to timely submit call reports and had to be reminded on multiple occasions to submit his reports. *See* Dkt. 32-19 at 7–9. While Mr. Mullin may not find it important that he turned the reports in late, *see* Dkt. 40-3 at 8, 85:19–86:22, Temco found it significant. Unlike *O'Reilly*, Mr. Mullin

9

has not produced evidence establishing he fully cooperated and engaged in new initiatives; nor has he established Temco created a pretext by relying on this reason for termination.

### 2.     Credibility Issues

Mr. Mullin further argues that the Wisconsin, Wayne Township, and Speedway incidents cited by Mr. Mikoola and Mr. Baylog are not supported by the factual record and, therefore, these reasons are pretextual. To show pretext in this manner, Mr. Mullin must demonstrate "(1) it is more likely that a discriminatory reason motivated the employer than the proffered non-discriminatory reason or (2) that an employer's reason is not credible." *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004). "Pretext is more than a mistake on the part of the employer; it is a phony excuse. Where a defendant has proffered more than one reason for the challenged action, a plaintiff must address all of the employer's suggested reasons." *Id.* (citation omitted).

The Court finds that the factual disputes over whether Mr. Mullin received a formal invitation to the Wayne Township event or simply failed to attend or whether he eventually arrived late to the Speedway event are immaterial to the precise question at hand. As the non-moving party, the Court accepts Mr. Mullin's versions. Although Mr. Mullins' evidence about these events helps clarify what happened, it does not indicate that Mr. Baylog was untruthful or not credible in his version of events. Of more concern is evidence of the Wisconsin factory incident. Mr. Mullin has submitted affidavits from the Westfield representatives who were allegedly "left alone, wandering the factory". The representatives declared that Mr. Mullin was with them at all times during the factory visit and at no time were they looking for him. Mr. Mikoola's version of events seems to lean more toward a "phony excuse." However, even though Mr. Mullin has established he did not leave Westfield representatives alone at the

Wisconsin factory, he has not shown that Temco's other reasons for termination—poor performance, lack of cooperation, and not performing to expectations—were pretextual.

In summary, Mr. Mullin has not established that a reasonable jury could find that Temco fashioned its reasoning as a post-hoc pretext for age discrimination. Though the Court recognizes the disputed facts about events contributing to Mr. Mullin's termination, the Court does not find these disputes materially dispositive.

**B.      Suspicious Timing and Comments**

Apart from pretext, Mr. Mullin contends age discrimination is shown because shortly after he was terminated, Temco hired two individuals in their twenties as sales associates. Mr. Mullin is correct to point out that "the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). It is undisputed that Temco hired Mr. Wolka and Mr. Timmer as sales associates, that both were in their twenties, and that neither had sales experience. Temco has established that Mr. Timmer was a part time subcontractor engaged in sales for the northern part of Indiana. Mr. Mullin did not service the northern part of Indiana, so it cannot be said that Mr. Timmer was a true replacement for Mr. Mullin. Therefore, the Court finds that Mr. Timmer's hiring is not evidence that Mr. Mullin was terminated for an age-related reason.

As for Mr. Wolka, Mr. Mullin directs the Court to Mr. Mikoola's testimony, in which the following exchange took place:

> Q  What were Mr. Wolka's strengths?
>
> A  Well, he was a young individual, to put it mildly, very, very inexperienced. But he was a pleasant person, promised us -- or I should say made some claims that he would do an aggressive job, and get out there and drive a demo. He acquired a CDL, Commercial Driver's License, to drive the demos. And,

11

> you know, so we, you know, our thought process on him was he was a young guy, give him a shot drive around the state showing fire trucks and learn the business.
>
> Q   Was Mr. Wolka's role at the company similar to Mr. -- strike that. What were Mr. Wolka's weaknesses?
>
> A   Well, his youth, and the gist, he didn't want to -- the time commitment, he wasn't willing to put the time in to do what needed to be done. He had another [sic] interests, to put it mildly.

Dkt. 40-2 at 8, 37:22–38:16. Temco argues that Mr. Mullin twists Mr. Mikoola's words out of context by suggesting that Mr. Mikoola considered Mr. Wolka's youth as a strength. Taken in context, Temco argues, it is clear that Mr. Mikoola considered Mr. Wolka's youth as one of his weaknesses. This is supported by the testimony and evidence on record establishing that Temco as a company valued seasoned, experienced, and older sales employees. For example, Mr. Keiser affirmed that most of Temco's sales associates and subcontractors are over the age of 40, because "selling sophisticated equipment to governmental agencies and fire officials requires in-depth knowledge of the industry and the products being sold." Dkt. 32-19 at 3. The hiring of a young, inexperienced, but eager new sales associate—while potentially suspicious—does not support a finding of intentional discrimination under the facts in this case.

This case is unlike *Olsen v. Northern FS, Inc.*, 387 F.3d 632, 636 (7th Cir. 2004), in which plaintiff had presented evidence showing that his job performance was satisfactory, that someone substantially younger was hired with no sales experience, *and* a comment was made that plaintiff was undesirable because of his age. Here, there is no evidence of any disparaging comments being made concerning Mr. Mullin's age. And, though Mr. Mullin has established he was the top sales performer in Indiana in past years, he has not established that his most recent performance was satisfactory and the evidence supports the contrary. Further, he has not

produced any direct or circumstantial evidence that, as a whole, would lead a reasonable jury to conclude he was fired because of his age.

The Court finds the designated evidence rejects the inference of discriminatory intent, that being Mr. Mullin was terminated because of his age. The evidence supports that Mr. Mullin repeatedly upset his superiors and in their judgment, his work performance did not meet their legitimate expectations. It is not sufficient for the employee to show that his employer fired him for incorrect or poorly considered reasons, instead, he must establish that the employer did not honestly believe the reasons it gave for terminating him. *Pitasi v. Gartner Group, Inc.,* 184 F.3d 709, 718 (7th Cir. 1999).

## IV.  **CONCLUSION**

For the reasons set forth above, Mr. Mullin has not established he was terminated in violation of the ADEA.  Accordingly, Temco's Motion for Summary Judgment (Dkt. 31) is **GRANTED**.

SO ORDERED.

Date:  01/14/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Quincy Erica Sauer
MACEY SWANSON & ALLMAN
qsauer@maceylaw.com

Barry A. Macey
MACEY SWANSON AND ALLMAN
bmacey@maceylaw.com

Daniel Joseph Layden
WILLIAMS BARRETT & WILKOWSKI, LLP
dlayden@wbwlawyers.com